## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ESTATE OF PHILLIP JAMES BINN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| | } | |
| **v.** | } | |
| | } | |
| | } | **Case No.: 2:17-cv-01993-RDP** |
| | } | |
| **CITY OF ADAMSVILLE, et al.,** | } | |
| | } | |
| **Defendants.** | | |

## MEMORANDUM OPINION

This case is before the court on the Motions to Dismiss filed by Defendants Warren Cotton, R.W. Carter, Rick Whitfield, and William Dougherty, and by the City of Adamsville, Alabama. (Docs. # 52 and 53). The parties have fully briefed the Motions. (Docs. # 56 through 59). For the reasons explained below, the Motions to Dismiss (Docs. # 52 and 53) are due to be granted.

## I.       Background[1]

Plaintiff is the Estate of Phillip James Binn ("the Estate" or "Plaintiff"). The Estate brings this action by and through its personal representative, Vivian Odom, Binn's mother. (Doc. # 19, ¶23).

---

[1] "A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true." *Mays v. U.S. Postal Serv.*, 928 F. Supp. 1552, 1557-58 (M.D. Ala. 1996).  Thus, for the purpose of resolving Defendants' Motions to Dismiss under Rule 12(b)(6), the court treats the facts alleged in the Amended Complaint (Doc. # 19) as true.

Defendant Cotton is the City of Adamsville's current Chief of Police. (Doc. # 33-1 ¶1 and Doc. # 19 ¶3). Defendant Carter was the Chief of Police at the time of Binn's death. (Doc. # 19 ¶4). Defendant Whitfield is currently an Adamsville police officer. (Doc. # 33-2 ¶1 and Doc. # 19 ¶5). Defendant Dougherty was previously an Adamsville police officer, but is now retired. (Doc. # 33-3 ¶1 and Doc. # 19 ¶6). Cotton, Carter, Whitfield, and Dougherty (collectively the "Individual Defendants") are sued only in their individual capacities. (Doc. # 19 at 1, ¶9). The City of Adamsville is also named as a Defendant. (Doc. # 19 ¶2).

On February 19, 2017, Adamsville received a 911 call from Jaamal Thomas reporting that Binn had shot himself. (Doc. # 19 at ¶20). Binn, a former United States Army Ranger who had served tours of duty in various war zones, was found deceased inside his home in Adamsville, Alabama. (*Id.* at ¶¶15-16). Thomas was present at the time of Binn's death. (*Id.* at ¶21). When first responders arrived, Binn was found to have sustained a gunshot wound to the back of his head. (*Id.* at ¶17). The bullet exited through the front of Binn's head and through the roof of Binn's residence. (*Id.* at ¶18). The bullet that killed Binn has not been found. (*Id.* at ¶19).

Binn's body was found positioned with his head underneath a chair and table in his residence. (*Id.* at ¶24). The weapon that was allegedly used in Binn's death was found several feet above and away from Binn's body on the countertop of an island in Binn's residence. (*Id.* at ¶25). The weapon was in a de-cocked condition. (*Id.* at ¶26). A few hours after Binn's death, Defendants concluded that Binn's death was a suicide. (*Id.* at ¶31).

Binn's body was transported to the Jefferson County, Alabama Coroner's Office, which examined his body. (*Id.* at ¶¶27-28). The Jefferson County Coroner noted that no gunshot residue was found on Binn's hands or clothing. (*Id.* at ¶29). The Jefferson County Coroner's Office ruled that Binn's death was a suicide. (*Id.* at ¶33).

On November 29, 2017, Plaintiff filed this action in federal court. (Doc. # 1). Plaintiff sued Defendants Carter, Cotton, Whitfield, and Dougherty in their individual capacities. (Doc. # 1). However, the summonses to Defendants Cotton, Whitfield, and Dougherty were not served on them personally. (Docs. # 5, 6, and 8). Rather, each of the summonses was served on Lynn Lindsey, whom the "Proof of Service" indicates was only designated to accept service on behalf of the "Adamsville PD." (Docs. # 5, 6, and 8). The Individual Defendants raised the issue of improper service in their initial Motion to Dismiss. (Docs. # 12 and 13). In response to that and other Motions, on February 9, 2018, Plaintiff filed an Amended Complaint. (Doc. # 19). The court docket does not reveal any attempts by Plaintiff to personally serve Defendants Cotton, Whitfield, or Dougherty.

In addition to Defendants Cotton, Whitfield, Dougherty, Carter, and Adamsville, Plaintiff's Amended Complaint named Fictitious Defendants A and B and Killer John Doe. (*Id.*). On February 1, 2018, upon Defendants' request, the court struck Fictitious Defendants A and B from the record because fictitious party practice is generally not permitted in a federal court. (Docs. # 35, 47); *see Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) ("As a general matter, fictitious-party pleading is not permitted in federal court."). Similarly, the claims against Killer John Doe, another fictitious party, have been dismissed without prejudice. *See Richardson*, 598 F.3d at 738.

In the Amended Complaint, Plaintiff alleges that the position of Binn's body, the location of the gun, and the condition of the gun are all inconsistent with suicide, the conclusion reached by Defendants regarding the cause of death. (Doc. # 19 at ¶26). Plaintiff further alleges that Defendants failed to conduct an investigation into Binn's death that is consistent with the prevailing standards and practices used by similarly situated law enforcement agencies. (*Id.* at

¶30). Specifically, the Amended Complaint alleges the following claims: that Plaintiff was denied right of access to the courts in violation of 42 U.S.C. § 1983 (Count I); that Defendants were responsible for a state-created danger in violation of 42 U.S.C. § 1983 (Count II); that Defendants Adamsville, Carter, and Cotton failed to implement appropriate policies, training methods, and practices in violation of 42 U.S.C. § 1983 (Count III); and that Defendants engaged in a civil conspiracy that "violated Binn's civil rights" (Count IV). (Doc. # 19). The Amended Complaint also included a wrongful death claim (Count V) and a negligence claim (Count VI) against Killer John Doe. (Doc.19). The court previously dismissed the state-created danger clam (Count II) for lack of standing, and the wrongful death (Count V) and negligence claim (Count VI) against Killer John Doe. (*Id.* at p. 17-18; Docs. # 48, 50).

Defendants have moved to dismiss Plaintiff's remaining claims. (Docs. # 52, 53). The court addresses their motions below.

## II.    Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense … to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

A qualified immunity defense can be reviewed at the Rule 12(b)(6) stage of litigation. *Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007). The Supreme Court has recognized that a plaintiff must allege a "violation of clearly established law" before he or she is entitled to discovery from a defendant eligible for qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). *See also Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1300 (11th Cir. 2007) ("If a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should

grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right.").

## III.    Discussion

As noted above, the court has already dismissed certain claims in this case. (Docs. # 48, 51). The remaining claims in this case are the access to the courts claim against all Defendants (Count I), the failure to train claim against Adamsville, Carter and Cotton (Count III), and the conspiracy claim against all Defendants (Count IV). These claims are brought pursuant to 42 U.S.C. § 1983 and Alabama state law. (Doc. # 19 at 4). To state a claim for relief under § 1983, Plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* (citations omitted).

### A.    Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, "[a]t the motion to dismiss stage in the litigation, 'the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined.'" *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010) (citation omitted). "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.'"

*Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (changes in *Pearson*).

Qualified immunity "protects government officials performing discretionary functions from the burdens of civil trials and from liability." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1282 (11th Cir. 2008) (internal citations omitted). An official loses qualified immunity when his conduct violates "clearly established statutory or constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). However, the standard is "broad enough to cover some mistaken judgment, and it shields from liability all but the plainly incompetent or those who knowingly violate the law." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009) (quoting *Montoute v. Carr*, 144 F.3d 181, 184 (11th Cir. 1997)).

A defendant has the initial burden of proving that he was acting within the scope of his discretionary authority in order to be eligible for qualified immunity. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citing *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (2003)). Discretionary authority exists if a defendant was (1) performing a legitimate job-related function (2) through means within his power to utilize. *Holloman*, 370 F.3d at 1266. In other words, a "defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description." *Id*.

If a defendant makes this initial showing, the burden shifts and the plaintiff must demonstrate that the defendant is not entitled to qualified immunity. *Holloman*, 370 F.3d at 1264. Here, the Supreme Court has formulated a two-step analysis to determine whether an official (such as the Individual Defendants) is entitled to qualified immunity, and a district court has discretion to determine in what order to address the two steps. *Keating*, 598 F.3d at 762 (citing *Pearson*, 555 U.S. at 232, 236). The court must decide whether the facts as alleged by Plaintiff

establishes a violation of a constitutional right. *Pearson*, 555 U.S. at 232. The court also must decide whether the right at issue was "clearly established" at the time of the alleged misconduct. *Id*. Only if Plaintiff can prevail as to *both* elements of the test, are Defendants not subject to qualified immunity. *Pearson*, 555 U.S. at 232, 236.

### 1. The Individual Defendants Were Performing a Discretionary Function

Plaintiff's claims arise from Defendants' handling and investigation of Binn's death as part of their law enforcement duties. (Doc. # 19). Specifically, Plaintiff alleges that "Defendants failed to conduct an investigation into Binn's death that was consistent with the prevailing standards and practices utilized by similarly situated law enforcement agencies, including performing a crime-scene/forensic investigation according to recognized protocols and methods in the field of criminal forensics." (Doc. # 19 at ¶ 30). Nonetheless, Plaintiff argues that "the Individual Defendants offer nothing by way of proof, [] to show that they were performing discretionary acts at the time they handled Binn's death scene" so that the burden of proof never shifts to Plaintiff in the two-step qualified immunity analysis. (Doc. # 57 at 13).

The Eleventh Circuit has held, however, that police investigations "clearly fall within the scope of official duties of a law enforcement officer … and [] usually are considered 'discretionary function[s] within the line and scope of ... law enforcement duties' for the purposes of discretionary-function immunity." *Grider v. City of Auburn, Ala*., 618 F.3d 1240, 1268 (11th Cir. 2010) (quoting *Swan v. City of Hueytown*, 920 So.2d 1075, 1078–79 (Ala. 2005) (law enforcement officers perform "discretionary functions" under § 6–5–338 when they "'exercis[e] judgment in the enforcement of the criminal laws,'" including "gathering of information and subsequent arrest") (quoting in turn *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000))). Therefore, Plaintiff's Amended Complaint alleges that the claims in this case arose

while the Individual Defendants were exercising a discretionary function. The Individual Defendants have met their burden.

## 2. Was There a Violation of a Constitutional Right?

In the Amended Complaint, Plaintiff alleges that "Defendants failed to conduct a proper investigation of the incident that occurred on February 19, 2017 that resulted in the death of Binn." (Doc. # 19 at ¶ 36). Plaintiff details tasks that Defendants allegedly "failed to perform." (Doc. # 1 at ¶¶ 36-42). Plaintiff also alleges that "Defendants intentionally distorted and concealed evidence from the crime scene and caused a denial of Plaintiffs' right of access to courts." (Doc. # 19 at ¶ 43). Therefore, properly viewed, Plaintiff has alleged a violation of the right of access to the courts. (Doc. # 19 at 6-10).

More specifically, Plaintiff's Amended Complaint alleges that Binn was found to have sustained a gunshot wound to the back of his head and that the "bullet passed through Binn's head from a rear trajectory, exited the front of Binn's head, and continued to travel through the ceiling of Binn's residence and exited the roof." (Doc. # 19 at ¶ 18). It alleges that Binn's body was positioned with his head underneath chair legs, but the weapon that was allegedly used in Binn's death was found on a nearby countertop in a de-cocked condition, which requires a deliberate manipulation of the weapon with both hands. (Doc. # 19 at ¶¶ 24-26). And, no gunshot residue was found on Binn's hands or clothing. (Doc. # 19 at ¶ 29). In summary, Plaintiff alleged that "[d]ue to Defendants intentionally concealing evidence such as the forensic and ballistic reports that incriminate Killer John Doe, intentionally failing to develop further evidence that would identify and incriminate Killer John Doe, and actively engaging in covering up Binn's murder by calling it a suicide, Defendants, [] denied Plaintiff's access to court to proceed with an action against Killer John Doe." (Doc. # 19 at ¶ 44).

The Eleventh Circuit has stated that "interference with the right of court access by state agents who intentionally conceal the true facts about a crime *may be* actionable as a deprivation of constitutional rights under 42 U.S.C. §§ 1983 and 1985." *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) (emphasis added) (citing *Flores v. Satz*, 137 F.3d 1275, 1278 n. 7 (11th Cir. 1998) (distinguishing between officials who intentionally conceal facts and those who fail to investigate fully) and *Ryland v. Shapiro*, 708 F.2d 967, 973 (5th Cir. 1983) (allegation "that agents of the state intentionally engaged in conduct that interfered with [the plaintiffs'] exercise of their constitutionally protected right to institute a wrongful death suit" offered a valid theory of recovery)). However, it is well settled that law enforcement officers have no affirmative duty to investigate an incident. *Royster v. Brown*, 2007 WL 433089, at *3 (N.D. Fla. Feb. 5, 2007) (collecting cases).[2]

In *Chappell*, the Eleventh Circuit cited the Seventh Circuit's analysis in *Bell v. Milwaukee*, 746 F.2d 1205, 1261 (7th Cir.1984), with approval. *Chappell*, 340 F.3d at 1282-83.

---

[2] The *Royster* panel cited the following authorities in support of its conclusion that law enforcement officers have no affirmative constitutional duty to investigate complaints:

> *Andrews v. Fowler*, 98 F.3d 1069, 1078-79 (8th Cir. 1996) (dismissing civil rights claim against police chief for failing to investigate plaintiff's rape; holding that failure to investigate "did not rise to the level of a separate constitutional violation of [the plaintiff's] rights."); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) (stating "we can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved."); *Beard v. O'Neal*, 728 F.2d 894, 899 (7th Cir. 1984); *Fulson v. Columbus*, 801 F. Supp. 1, 6 (S.D. Ohio 1992); *Dow v. Pocomoke City*, 745 F. Supp. 1137, 1139 (D. Md. 1990); *Moses v. Kennedy*, 219 F. Supp. 762 (D.D.C. 1963) (holding that a private citizen does not have a constitutional right to have his claim investigated and prosecuted by the FBI), *aff'd sub nom.*, *Moses v. Katzenbach*, 342 F.2d 931 (D.C. Cir. 1965); *Lovoi v. F.B.I.*, No. 99-3563, 2000 WL 33671769, at *2 n. 4 (E.D. La. 2000) ("Citizens do not enjoy a constitutional right to have their claims investigated by federal or local executive officials.").

*Royster*, 2007 WL 433089, at *3.

In *Bell*, the Seventh Circuit explained that "defendants need not literally bar the courthouse door []. This constitutional right is lost where [] police officials shield from the public and the victim's family key facts which would form the basis of the family's claims for redress." *Chappell*, 340 F.3d at 1283 (quoting *Bell*, 746 F.2d at 1261). In its opinion agreeing with *Bell*, the Eleventh Circuit further explained:

> Although access to the concealed evidence might have strengthened their case, the Chappell children do not allege that they were or would have been prevented from filing a wrongful death suit within the statute of limitations period, nor that the Defendants' actions would have made such a suit inadequate, ineffective, or not meaningful.

*Chappell*, 340 F.3d at 1283.

Viewed in light of this authority, Plaintiff's Amended Complaint does not adequately allege a deprivation of a constitutional right. What Plaintiff's Amended Complaint alleges, in effect, is that Defendants failed to complete an adequate investigation because they did not conclude that Binn was murdered. (Doc. # 19). Plaintiff has not alleged that Defendants concealed any crucial information of which they were aware. (Doc. # 19). Notably, the Amended Complaint identifies the person who called 911 and was allegedly present when Binn died. (Doc. # 19 at ¶¶ 19-20). According to the allegations of the Amended Complaint, Plaintiff has had sufficient evidence to proceed with a wrongful death action against Killer John Doe, if he can be identified. (Doc. # 19). The crux of the Amended Complaint is that Defendants failed "to develop further evidence that would identify and incriminate Killer John Doe." (Doc. # 19 at ¶ 44). Again, however, law enforcement officers have no affirmative duty to investigate an incident.[3] *Royster*, 2007 WL 433089, at *3. "The [Supreme] Court's [] decisions consistently

---

[3] The court need not address if this is the right "policy" for at least two reasons. First, it is not generally the courts' responsibility to set societal policy in that sense. Second, law enforcement stands accountable in other ways to have sound policies (*e.g.* elections, citizen and media criticism).

hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Therefore, the court concludes that Plaintiff has not adequately alleged a violation of a constitutional right.

### 3.     Was That Right "Clearly Established"?

Even if Plaintiff's Amended Complaint had adequately alleged a constitutional violation of the right of access to the courts (which, to be clear, it has not), that right under the facts alleged was not clearly established at the time of the alleged violation. While the Supreme Court's case law "does not require a case directly on point" for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 307 (2015)) (emphasis added). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018)

Moreover, "'clearly established law' should not be defined 'at a high level of generality.'" *White*, 137 S. Ct. at 552 (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). "[T]he clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). That is, a plaintiff usually must "identify a case where an officer acting under similar circumstances as [the defendants] was held to have violated the" constitutional right at issue. *Id.* When faced with "a unique set of facts," "[t]his alone should have been an important indication [] that [the defendant's] conduct did not violate a 'clearly established' right." *White*, 137 S. Ct. at 552.

This is not a case where it is obvious that there was a violation of any clearly established right. First, Plaintiff failed to identify cases where officers acting under similar circumstances were held to have violated the right of access to the courts. Second, Plaintiff's resort to the argument that "there also exists an 'obvious clarity' exception which allows the Plaintiff to strip the Individual Defendants of their claimed qualified immunity" (Doc. # 57 at 15 (citing *Dukes v. Deaton*, 852 F.3d 1035, 1043-44 (11th Cir. 2017)) is also off the mark. Plaintiff argues that the Defendants' "goal under the circumstances presented in this case was quite obviously to conduct an appropriate and reasonable investigation" and that "Defendants knew or should have reasonably known that their failure would have a negative impact on the very people who are the known beneficiaries of their work." (Doc. # 57 at 16). However, because there is ample authority for the proposition that law enforcement officers have no affirmative duty to investigate an incident, the court simply cannot conclude that the Individual Defendants' conduct violated a 'clearly established' right." *See Royster*, 2007 WL 433089, at *3; *White*, 137 S. Ct. at 552.

For the above reasons, the court concludes that the Individual Defendants are entitled to qualified immunity under the facts of this case.

### B. Count I Constitutes Impermissible Shotgun Pleading

Plaintiff's access to the courts claim is due to be dismissed for the substantive reasons discussed above. But additionally, in examining the alleged factual underpinnings of Count I, it has become clear that Count I is due to be dismissed for the additional reason that it represents shotgun pleading. The court generally noted that the Amended Complaint was a shotgun pleading in its August 24, 2018 Memorandum Opinion. (Doc. # 50 at 6 n.1 ("Indeed, in its current state, the amended complaint is a shotgun pleading.")). Yet, Plaintiff has made no effort to remedy this deficiency. Where a plaintiff fails to make meaningful modifications to her

complaint, a district court may dismiss the case under the authority of either Rule 41(b) or the court's inherent power to manage its docket. *See Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337 (11th Cir. 2005).

Based on the allegations of the Amended Complaint, the court is unclear regarding which Individual Defendants were present at the scene of Binn's death. Plaintiff's Amended Complaint was particularly vague on this point as well as this issue of which Individual Defendants were responsible for the alleged investigatory deficiencies. (Doc. # 19). Plaintiff alleges that "Defendant *Adamsville* arrived on the scene and is alleged to have discovered Binn bleeding from his head." (Doc. # 19 ¶23); "*Defendants* failed to conduct an investigation into Binn's death" (Doc. # 19 ¶30); "*Defendants* concluded, in the absence of any true investigation that Binn's death was a suicide." (Doc. # 19 ¶31); and "*Defendants*, at no point in time, treated the scene of Binn's death as a potential crime scene." (Doc. # 19 ¶39) (emphasis added). Therefore, for the additional reason that this claim represents shotgun pleading, Count I of the already-amended Complaint is due to be dismissed.[4]

### C. Plaintiff Has Not Alleged a Basis for Supervisory Liability Under Count III

In Count III, Plaintiff alleges that Defendants Adamsville, Carter and Cotton "failed to implement adequate policies, training, and supervisory procedures for their employees." (Doc. # 19 at ¶57). "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) *abrogated in part on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) (quoting *Hartley v. Parnell*,

---

[4] To be clear, the court likely would have considered giving Plaintiff one final chance to re-plead if the allegations stated a claim of a violation of a clearly established legal right, but they do not.

14

193 F.3d 1263, 1269 (11th Cir.1999)) (internal quotation marks and citation omitted). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014).

A causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. *Cottone*, 326 F.3d at 1360. The standard by which a supervisor may be held liable in his individual capacity for the actions of a subordinate is "extremely rigorous." *Keith*, 749 F.3d at 1048; *Cottone*, 326 F.3d at 1360. And '[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'" *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (quoting *Hartley*, 193 F.3d at 1269).

Plaintiff's Amended Complaint does not even attempt to show a causal connection by demonstrating a pattern of widespread abuse. Nor does it plead any facts that might support an inference that Cotton and Carter directed anyone to act unlawfully or knew that they would do so and failed to stop them. Rather the allegations of Count III relate solely to the particular investigation of Binn's death. Otherwise, they simply, and in a wholly conclusory fashion, allege a generalized failure to train or unofficial custom or policy. (Doc. # 19 at ¶¶ 57-77).

Plaintiff alleges that "[t]he unofficial custom [] allowed agents [] to fail to investigate" and that "[t]he unofficial policy [] was and is a driving force in the Plaintiff's inability to face Binn's killer" and is a "violation of the Plaintiff's due process." (Doc. # 19 at ¶¶ 72-74). But these allegations on their face are insufficient to state a claim of supervisory liability against Cotton and Carter. Plaintiff has alleged no *facts* showing a specific policy implemented or enforced by Cotton and Carter. Plaintiff has not alleged any facts supporting a custom of failing to investigate or any facts showing a persistent and widespread practice of failing to investigate. In fact, Plaintiff has alleged no facts regarding any other investigation. Thus, Plaintiff fails to plausibly allege a causal connection between Cotton and Carter and any alleged failure to investigate that Plaintiff experienced in this case. Therefore, Count III against Cotton and Carter is due to be dismissed.

### D.    Plaintiff Has Not Alleged a Basis for Municipal Liability Under Count III

"The Supreme Court has placed strict limitations on municipal liability under section 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Like supervisory liability, municipal liability "under § 1983 may not be based on the doctrine of respondeat superior." *Grech v. Clayton County*, 335 F.3d 1326 at 1329 (11th Cir. 2003) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978). "[A] municipality may be held liable for the actions of a police officer only when municipal 'official policy' causes a constitutional violation." *Gold*, 151 F.3d at 1350 (citing *Monell*, 436 U.S. at 694-95). Plaintiff has not alleged the substance of any officially promulgated policy, such as an ordinance or administrative order, that caused the alleged constitutional violation.

To hold a municipality liable, Plaintiff "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference

to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton*, 489 U.S. at 388). A policy is defined as a "decision that is officially adopted by the municipality … ." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479-80 (11th Cir. 1991)). A custom is defined as a "practice that is so settled and permanent that it takes on the force of law." *Sewell*, 117 F.3d 488, 489. (citing Monell, 438 U.S. at 690-94).

Here, the court has already concluded that Plaintiff has not properly alleged a violation of its constitutional right of access to the courts. But, even if Plaintiff's constitutional rights had been violated, in order to state a claim against Adamsville, Plaintiff must allege that the City had an unconstitutional policy or custom. *See Wilson v. Tillman*, 613 F. Supp. 2d 1254, 1266 (S.D. Ala. 2009) ("[T]he city of [Adamsville] is not automatically liable under § 1983 even if it inadequately hired, trained or supervised its police officers and those officers violated [Plaintiff's] unconstitutional rights."). "To show an unconstitutional policy or custom, [P]laintiff must identify the policy or custom, connect the policy or custom with the government entity itself, and show that the particular injury was incurred because of the execution of that policy." *Id.* (citing *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (en banc)). "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice." *McDowell*, 392 F.3d at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098 (11th Cir. 1999)).

As discussed above in relation to Defendants Cotton and Carter, Plaintiff has not sufficiently alleged a factual basis to support a claim that the Adamsville officers acted consistently with a policy formally directing them to fail to properly investigate deaths such as

Binn's. And, it is equally clear that Plaintiff has not alleged with proper factual specificity a custom or practice by Adamsville allowing such behavior. For example, Plaintiff has not alleged that any similar incidents occurred that would have placed Adamsville on notice of the need for additional training and supervision. Similarly, Plaintiff has not made any other factual allegations which would explain why additional training or supervision was obviously necessary.

Plaintiff alleges that "[t]he unofficial custom [] allowed agents [] to fail to investigate" and that "[t]he unofficial policy [] was and is a driving force in the Plaintiff's inability to face Binn's killer and a violation of the Plaintiff's due process." (Doc. # 19 at ¶¶ 72-74). Plaintiff argues that "there is nothing 'formulaic', 'naked', nor 'general [] about the Plaintiff's claims contained in the Amended Complaint." (Doc. # 56 at 13. The court disagrees. As discussed above, the allegations of Plaintiff's Amended Complaint are conclusory and devoid of factual content. *Iqbal*, 556 U.S. at 678. Therefore, Count III against Adamsville is due to be dismissed.

### E.      **Plaintiff Has Not Alleged an Actionable Conspiracy Claim**

Plaintiff contends that "[t]his action is not an action brought by Binn's Estate as an enforcement of Binn's constitutional rights." (Doc. # at 57 at 10). That may be true for other claims in Plaintiff's Amended Complaint, but Plaintiff's conspiracy claim is, by its terms, based upon a violation of Binn's civil rights. (Doc. # 19 at ¶¶ 78-85). In that claim, Plaintiff alleges that "[t]he individually named Defendants concerted with each other, and conspired to deny *the civil rights of Binn*." (Doc. # 19 at ¶ 79)(emphasis added). Plaintiff further alleges that "Defendants' conspiracy resulted in the denial of equal protection of the law *to Binn*" and "[t]hese acts of unlawful conspiracy by Defendants violated *Binn's civil rights*." (Doc. # 19 at ¶¶ 84-85)(emphasis added).

Defendants move to dismiss Plaintiff's conspiracy claim because it seeks to vindicate Binn's civil rights and was not filed prior to his death. (Doc. # 52 at 6-7). They argue that under

either section 1983 or Alabama state law, Alabama's survivorship law, under which unfiled tort claims do not survive a decedent's death, applies. (*Id.*). Plaintiff responds merely that the Amended Complaint adequately pleads civil conspiracy. (Doc. # 57 at 20). Plaintiff does not address Defendants' survivorship argument. (Doc. # 57).

"[A]n action under § 1983 'is personal to the injured party.'" *Waites v. Limestone Corr. Facility*, 2017 WL 2797124, at *13 (N.D. Ala. June 27, 2017) (quoting *Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1047 (11th Cir. 2011)). The issue in *Estate of Gilliam* was whether a § 1983 excessive force claim survives in Alabama if the injured party dies before the lawsuit is filed, or abates pursuant to Alabama's survivorship statute, Ala. Code § 6-5-462. 639 F.3d at 1046-50. The Eleventh Circuit held that Ala.Code § 6–5–462 applies to § 1983 actions. *See id.* at 1046–50. "Under that provision, a deceased's unfiled tort claims do not survive his death." *Burns v. City of Alexander City*, 110 F. Supp. 3d 1237, 1245 (M.D. Ala. 2015) (citing Ala.Code § 6–5–462; *Estate of Gilliam*, 639 F.3d at 1046; *Bell v. City of York, Alabama*, 2013 WL 1352022, at *27 (N.D. Ala. Mar. 29, 2013)).

Binn did not file an action alleging that Defendants violated his civil rights. (The court understands this did not occur for obvious reasons). Nevertheless, Plaintiff cannot now do so after his death. Therefore, Defendants' Motion to Dismiss Plaintiff's conspiracy claim seeking redress for the violation of Binn's rights is due to be granted.

There are additional reasons why this conspiracy claim is due to be dismissed. Plaintiff has failed to properly allege an actionable conspiracy. To establish a conspiracy claim under § 1983, a plaintiff must allege three elements: "(1) a violation of [Plaintiff's] federal rights; (2) an agreement among the Defendants to violate such a right; and (3) an actionable wrong." *Hoelper v. Coats*, 2010 WL 4292310, at *5 (M.D. Fla. Oct. 27, 2010) (citing *Geidel v. City of Bradenton*

19

*Beach*, 56 F.Supp.2d 1359, 1367 (M.D. Fla. 1999)). The Eleventh Circuit has explained that "the linchpin for conspiracy is agreement, which presupposes communication." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, (11th Cir. 1992).

"A plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists." *Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x. 873, 880 (11th Cir. 2016) (citing *GJR Investments, Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). "Mere conclusory, vague and general allegations of conspiracy are not sufficient to survive a motion to dismiss; rather, a defendant must be informed of the nature of the conspiracy which is alleged." *Gibbons v. McBride*, 124 F. Supp. 3d 1342, 1379 (S.D. Ga. 2015) (internal quotations omitted) (citing *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)). Indeed, "[t]he claims must include enough factual allegations to raise a right to relief above the speculative level." *Pittman*, 662 F. App'x. at 880 (citing *Twombly*, 550 U.S. at 554).

Plaintiff alleges Defendants concerted and conspired "by failing to conduct a proper investigation." (Doc. # 19 at ¶80). There are no allegations regarding communications between Defendants, underlying agreements reached, or specific action in concert. Simply put, such conclusory allegations, with no factual support, are insufficient to state a claim. *See Fullman*, 739 F.2d at 556-57.

Finally, the viability of Plaintiff's conspiracy claim hinges upon the existence of viable underlying cause of action under either § 1983 or Alabama common law. *Davis v. Alabama Dep't of Transportation*, 2017 WL 4391730, at *18 (M.D. Ala. Aug. 2, 2017); *Callens v. Jefferson Cty. Nursing Home*, 769 So. 2d 273, 280 (Ala. 2000) ("A plaintiff alleging a conspiracy must have a valid underlying cause of action."); *Drill Parts & Serv. Co., Inc. v. Joy Mfg. Co., et al.*, 619 So. 2d 1280, 1290 (Ala. 1993) (holding that conspiracy is not an

independent cause of action; therefore, when alleging a conspiracy, a plaintiff must have a viable underlying cause of action). Here, the court has concluded that Plaintiff's federal rights have not been violated, as discussed more fully above. Thus, because there has been no underlying violation of Plaintiff's constitutional rights, Plaintiff cannot maintain a claim for civil conspiracy under § 1983 regarding an alleged violation of those alleged rights. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) ("A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed *that resulted in the actual denial of some underlying constitutional right*.") (emphasis added); *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990) ("[T]he plaintiff must prove an actionable wrong to support the conspiracy.").

For all of these reasons, Plaintiff's conspiracy claim is due to be dismissed.

### F.     Failure to Properly Serve Cotton, Whitfield and Dougherty

Plaintiff's claims against Defendants Cotton, Whitfield and Dougherty are due to be dismissed for an additional reason: Plaintiff has never properly served them. "If the plaintiff fails to properly serve the defendant within [90] days, 'the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice[].'" *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (quoting Fed. R. Civ. P. 4(m)). Here, Plaintiff was on notice of its failure to serve Defendants Cotton, Whitfield, and Dougherty. (Docs. # 12 and 13). The burden is on a plaintiff to show that service is proper. *See Hyundai Merch. Marine Co. v. Grand China Shipping (Hong Kong) Co.*, 878 F.Supp.2d 1252, 1263 (S.D. Ala. 2012) ("Once the sufficiency of service is brought into question, the plaintiff has the burden to prove proper service of process.").

"Service must be made pursuant to state law or by: (1) 'delivering a copy of the summons and of the complaint to the individual personally;' (2) 'leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;' or (3) 'delivering a copy of each to an agent authorized by appointment or by law to receive service of process.'" *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013) (quoting Fed.R.Civ.P. 4(e)). "Generally, a government employee sued in his individual capacity must be personally served." *Reeves*, 542 F. App'x at 747 (citing *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011) (officer sued in his individual capacity was not properly served when summons was delivered to the superintendent of the police department)).

Rule 4 required Plaintiff to serve Defendants Cotton, Whitfield, and Dougherty. Plaintiff has not shown that proper service was effected, despite being on notice that these Defendants contended that service was improper and that failure do so may be grounds for dismissal under Rule 4(m). (Docs. # 12 and 13 (seeking dismissal on this basis)). Accordingly, for this additional reason, all claims against Defendant Cotton, Whitfield, and Dougherty are due to be dismissed without prejudice.

### G. Plaintiff is Not Entitled to a Second Opportunity to Amend the Complaint

Plaintiff has alternatively requested leave to amend the complaint again. (Doc. # 57 at 21). The court finds that any amendment would be futile due to the lack of clearly established law. Thus, this action will be dismissed without leave to amend.

## IV. Conclusion

The court is sympathetic to the circumstances of this case. The court respects Binn's service to our country, understands significant questions surround Binn's death, and also acknowledges that some of the alleged facts appear to be inconsistent with a determination that

the cause of death was suicide. However, the court is a tribunal which must apply the law; it is not an investigative agency. To proceed, Plaintiff must have a viable cause of action. It does not. For the reasons explained above, the Motions to Dismiss (Docs. # 52 and 53) are due to be granted. A separate order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this February 28, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE